IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY DeSHAZIER,<br><br>      **Plaintiff**,<br><br>v.<br><br>HANFORD POLICE OFFICER DALE WILLIAMS, BADGE No. 121; HANFORD POLICE OFFICER MITCH SMITH, BADGE No. 39; POLICE SERGEANT RUSSELL HILYAND; and CITY OF HANFORD, CALIFORNIA,<br><br>      **Defendants.** | CV F 06-0591 AWI SMS<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**<br><br>[Doc. # 52] |

**INTRODUCTION**

This is an action for violation of constitutionally guaranteed rights pursuant to 42 U.S.C., section 1983 by plaintiff Randy DeShazier ("Plaintiff") against defendants Hanford Police Officers Dale Williams, Mitch Smith, and Russell Hilyard, all of the Hanford Police Department (the "individual Defendants"), and the city of Hanford, California (collectively "Defendants"). The action arises out of a traffic stop executed by the individual Defendants wherein Plaintiff alleges he was subject to unlawful detention, pat-down search and arrest. In the instant motion, Defendants move for summary judgment on all Plaintiff's claims or, in the alternative, summary adjudication. Federal subject matter jurisdiction exists pursuant to 28 U.S.C., section 1331. Supplemental jurisdiction over California state law claims exists

pursuant to 28 U.S.C., section 1367.  Venue is proper in this court.

## PROCEDURAL HISTORY

Plaintiff's complaint was filed on May 15, 2006. On August 30, 2006, the court granted in part and denied in part Defendants' motion to dismiss the compliant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The court's August 29 order granted the motion to dismiss as to Defendant City of Hanford with leave to amend and dismissed any claims for punitive damages against City of Hanford with prejudice.  The court also directed Plaintiff to restate his fourth claim for relief to include a legal basis for the claim.

Plaintiff filed his First Amended Complaint ("FAC") on August 31, 2006. Defendants filed their answer on September 9, 2006.  On December 26, 2007, the court awarded sanctions against Plaintiff's attorney for violation of the court's discovery order.  A subsequent scheduling conference set non-expert discovery cut-off for July 25, 2008 and designation of expert witnesses by August 1, 2008.  The instant joint motion for summary judgment was filed August 26, 2008.  Plaintiff's opposition was filed on September 12, 2008, and Defedants' Reply was filed on September 22, 2008.  Defendants' motion was taken under submission as of September 25, 2008.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**BACKGROUND FACTS AND ALLEGATIONS**

The factual allegations set forth in the FAC are essentially identical to those set forth in the original complaint. The court's order of August 30, 2006 summarized the allegations set forth in the complaint as follows:

> The complaint alleges Plaintiff, an African-American male and formerly a parole officer for the California Department of Corrections, was driving his

4

vehicle on a Hanford street when he noticed a police car parked at the corner of an intersection Plaintiff was approaching. Plaintiff made a left-hand turn and the police car activated its lights and effected a traffic stop. Defendant Williams, the police officer effectuating the stop indicated Plaintiff was being stopped because he was traveling 36 miles per hour in a 25 mile per hour zone. The complaint alleges "Plaintiff contests this allegation [that he was traveling at excess speed] and believes his traffic stop was at least in part motivated by invidious discrimination and was the result of profiling, in violation of state and federal law." Complaint at 2:28 - 3:2. There is no further clarification as to whether there is a dispute as to the allegation of the speed at which Plaintiff was driving or whether there is a dispute as to whether Plaintiff's unlawful speed was the reason for the stop.

The complaint alleges Plaintiff indicated to defendant Williams that, in Plaintiff's view, Plaintiff should be allowed to continue on without issuance of a citation. At this point, defendant Williams was joined by defendants Smith and Hilyard. The complaint alleges the individual Defendants took offense to Plaintiff's comments about not being cited, and requested permission to search his car for weapons in retaliation. Permission for the search was given. No weapons were found during the search. Plaintiff was then "frisked." The complaint alleges that when Plaintiff questioned the appropriateness of the search and "frisk," defendant Williams responded by asking Plaintiff if he wanted to go to jail and by placing Plaintiff in handcuffs. The complaint alleges Plaintiff was then placed in a patrol car and informed he was being arrested for resisting arrest and impersonating a peace officer.

Doc. # 22 at 2:3-25.

## DEFENDANTS' UNDISPUTED MATERIAL FACTS

Defendants' undisputed material facts track the facts alleged in the FAC to a significant degree. The undisputed material facts that are proffered by Defendants that form the basis for their motion for summary judgment can be briefly summarized. Defendants allege that Defendant Officer Williams, using radar technology, determined that Plaintiff was traveling about 36 miles per hour in a 25 mile per hours zone. The traffic stop was effectuated as a consequence. About the time Williams made contact with Plaintiff, Defendant Officers Smith and Hilyard arrived on the scene to provide assistance. When Williams contacted Plaintiff and informed him of the observed traffic violation, Plaintiff repeatedly asked Williams to "cut him a break." Defendants allege that Plaintiff told Williams that Williams had discretion not to cite Plaintiff based on Plaintiff's experience as a parole officer. Defendants allege the individual Defendant officers were under the

5

impression Plaintiff was representing himself as currently being a parole officer.

Defendants allege that they conferred among themselves and Defendant Hilyard recognized Plaintiff as being a former parole officer who had been terminated from service several years earlier. The officers returned to Plaintiff who informed the officers he was a former parole officer. Based on these circumstances, the individual officer Defendants concluded Plaintiff had falsely represented himself to them as a parole officer in order to "fraudulently induce Officer Williams' belief that [Plaintiff] was an actual parole officer."

Officer Williams asked Plaintiff to exit the car. Plaintiff and Defendants agree consent for a search of the car was given. Defendants allege that during the search Plaintiff became angry and shouted obscenities at the officers. Defendants allege they felt threatened and handcuffed Plaintiff for the safety of the officers. The search was subsequently completed and no weapons or contraband were found. Plaintiff was cited for speeding in violation of California Vehicle Code section 22305 and for impersonating a peace officer in violation of Penal Code section 538d. Plaintiff was released on his own recognizance.

Plaintiff disputes each of the critical facts as alleged by Defendants. Specifically, Plaintiff submitted a declaration stating that Plaintiff: (1) was not speeding prior to the vehicle stop and he "could not reasonably have been perceived as speeding as reported by the officers;" (2) did not make any of the statements attributed to him or engage in any of the misconduct attributed to him by the Defendant officers' declarations[1]; (3) never admitted to speeding; and (4) never said anything that would lead a reasonable person to conclude that Plaintiff had represented himself as currently being a parole agent. See Declaration of Randy DeShazier, Doc. # 61 at 13.

Defendants respond to Plaintiff's objections to their proffered undisputed material facts by contending the objections are merely self-serving declarations of disputed facts and

---

[1] The court presumes the reference is to Defendants' allegation that he became angry and shouted obscenities when the officers instituted the search of Plaintiff's car.

6

not proffers of substantial evidence.

## DISCUSSION

As the court noted in its order of August 31, 2006, Plaintiff's style of pleading presents some analytical challenges.  Plaintiff's first claim for relief, for example, alleges false, selective and retaliatory detention, search, frisk and arrest against all Defendants, including the municipal defendant, without alleging the legal basis for recovery.  The court presumes that, since Plaintiff alleges Defendants' acts were in violation of Plaintiff's Fourth and First Amendment rights, the claim is alleged pursuant to 42 U.S.C. section 1983. Plaintiffs fourth claim for relief is similarly ambiguous with respect to both the basis or bases for Plaintiff's claim and the party or parties against whom the claim is alleged.  For purposes of the current discussion, however, the court need not sort out the exact nature of Plaintiff's claims.  It is sufficient for present purposes that the court determine whether the individual Defendants have carried their burden to show there remains no issue of material fact as to any claim of constitutional violation by the individual Defendants.  With respect to the City of Hanford, the court need only determine if Plaintiff has met his burden to show some evidence establishing a constitutional violation as to the City of Hanford.

**I. Summary Judgment Not Warranted for Individual Defendants**

Analytically, the threshold question with respect to individual Defendants' motion for summary judgment is whether individual Defendants have carried their burden of persuasion to show there is no issue of material fact as to the existence of probable cause for the traffic stop.  Although Plaintiff's first claim for relief leaves it to the court to determine if the allegation of "false, retaliatory and selective detention, frisk and arrest," is intended to describe separate and independent bases for recovery or a single actionable violation of First and Fourth Amendment rights, the entirety of Plaintiff's claim is severely undercut if there was probable cause for the traffic stop. See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (no Fourth Amendment violation arises out of custodial arrest for minor traffic

7

infraction where police officer has probable cause to believe arrested person violated criminal statute); Tatum v. City and County of San Francisco, 441 F.3d 1090, 1094 (9 Cir. 2006) (recognizing Atwater as authoritative in the Ninth Circuit for the proposition cited); People v. McKay, 27 Cal.4th 601, 607 (2002) (holding that, in light of Atwater and California Proposition 8, federal law governs validity of search and seizure, meaning that custodial arrests for fine only offenses does not violate Fourth Amendment even though state law does not authorize the arrest).  Likewise, any claim by Plaintiff that his arrest was the result of improper motive would be undercut if probable cause for the traffic stop is shown.  Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

The status of the evidence before the court now is much the same as it was when the court denied Defendants' motion to dismiss in its August 30, 2006 order.  Then, as now, Defendants allege Plaintiff was speeding and Plaintiff alleges he was not.  The facts alleged by the parties have been marginally enhanced; Defendants allege Plaintiff's speed was measured by radar and Plaintiff clarifies that, according to his subjective experience, he could not have been traveling the alleged speed during the time in question.

Defendants contend that Plaintiff has offered nothing to rebut Defendants' proffer of fact but a self-serving pro forma statement that he was not speeding and could not reasonably have been thought to have been speeding.  However, the issue here is the substance of Plaintiff's proffered fact, not its form.  As Plaintiff points out, he was a percipient witness. There is no reasonable interpretation of Plaintiff's response to Defendants' proffered undisputed material fact except to interpret it as a denial that the speeding occurred.  Whether the basis for Plaintiff's version of the facts is Plaintiff's observations of his speedometer or his subjective sense of how fast he was going goes to the weight of Plaintiff's testimony.

The status of the evidence is much the same with regard to Defendants' proffer of fact that Plaintiff presented himself as currently being a law enforcement officer.  Defendants

claim Plaintiff made statements that were reasonably interpreted as indicating Plaintiff was currently a parole officer. Plaintiff claims he made no such statements. Again, Plaintiff was a percipient witness and it is for the finder of fact to determine the veracity of Plaintiff's account of events. The same goes for the parties' evident dispute regarding Defendants' allegation that Plaintiff became angry and threatening during the search.

In sum, Plaintiff's claims against the individual Defendants rest on a small number of basic facts that are each disputed by percipient witnesses to the events. Those disputed facts, together or separately, raise issues of material fact as to the existence of probable suspicion for the traffic stop and probable cause for Plaintiff's arrest. There is no basis for judgment as a matter of law where the upon which the outcome of the case turns are in sharp dispute.

Because the parties dispute the basic factual basis for Plaintiff's claims, any discussion of qualified immunity is misplaced at this point. Consideration of qualified immunity requires a threshold determination that the facts show that an officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Whether there was a constitutional violation is precisely what is at issue here. In a typical qualified immunity inquiry, there is general agreement as to what happened, but disagreement as to whether the facts establish a constitutional violation or, if the facts do establish a constitutional violation, whether the right was clearly established in light of the context of the case. Id. In the instant case, there is no agreement as to the underlying facts. Defendants allege Plaintiff was speeding; Plaintiff denies he was speeding. Defendants allege Plaintiff made statements that he was currently a parole officer; Plaintiff denies making any such statements. Obviously, no officer could reasonably believe there could be probable cause to arrest for speeding and/or impersonating an officer if the person arrested was factually neither speeding or impersonating an officer. Defendants' qualified immunity argument only comes into play after it is determined that probable cause was lacking to effectuate the traffic stop. That fact remains in dispute.

The same consideration prevents summary judgment in favor of the individual Defendants with respect to Plaintiff's third and fourth claims for relief under California law. Plaintiff's third claim for relief alleges violation of California Civil Code section 52.1, which prohibits unlawful interference with the exercise of a constitutional right.  Since the factual issue in contention here – the issue of whether there was probable cause for the traffic stop or arrest – is determinative of whether section 52.1 was violated, there can be no summary judgment against the claim because the court has determined there remain facts in dispute. The same considerations prevent summary judgment as to Plaintiff's fourth claim for relief under state common law.

The individual Defendants have failed to carry their burden to show there is no issue of material fact as to any claim for relief in the FAC.  Summary judgment will therefore be denied as to the individual Defendants.

**II. City of Hanford**

Plaintiff's first claim for relief, which the court has interpreted as being pursuant to 42 U.S.C. § 1983, alleges that Defendant City of Hanford is liable for the acts of the individual officers.  The FAC does not actually allege a basis for City of Hanford's liability, but the court presumes Plaintiff intended to allege liability pursuant to Monell v. Dep't of Soc. Services, 436 U.S. 658 (1978).  Under Monell, local government liability for the constitutional violations of its officers is limited to instances were the constitutional violation is the result of official policy.  Id. at 694.  "A municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. [Citations.]" Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002). "Rather, to impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation." Id.

10

(citing <u>Plumeau v. Sch. Dist. #40 County of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997).

Plaintiff's first claim for relief alleges, in pertinent part:

> The City of Hanford is responsible under applicable law for the policy promulgated that led to the ratification of the individual [D]efendants' unlawful conduct. Specifically, [P]laintiff is informed and believes that the City of Hanford Police Department has a long history of racist conduct, in terms of selective enforcement and punishment, as well as in the hiring and retention of officers, and also in tolerating the involvement and participation of its members in discriminatory, "hate group" activities. In essence, through a tacit policy or policy of inaction in failing to remedy this longstanding misconduct, the City of Hanford has caused there to be a *de facto* policy, custom, or practice.
>
> As a direct and proximate result of [D]efendants' violation of his constitutional rights, plaintiff has suffered substantial damages, as described herein below.

Doc. # 23 at ¶¶ 12-13.

Defendants' motion for summary judgment as to Plaintiff's <u>Monell</u> claim against City of Hanford is based on their contention that no evidence has been adduced that would tend to support Plaintiff's bare assertion that City of Hanford "has a long history of racist conduct," that it tolerates the participation of its officers in "hate group" activities, or that there is any evidence of a "persistent and widespread pattern of Hanford citizens being arrested on the basis of a retaliatory animus for the exercise of their First Amendment rights." Defendants contend Plaintiff has failed to show that any policy, or deliberate indifference as to any *de facto* custom or practice, was a moving force behind the alleged constitutional violations Plaintiff claims he suffered. Doc. # 53 at 19:20-27.

Plaintiff's declaration, which is attached as an exhibit to his opposition to Defendants' motion for summary judgment, alleges as follows, in pertinent part:

> As a NAACP board member, I am aware that there have been many suspicious traffic stops complained of by African-Americans in Hanford by the Hanford Police Department. I myself was stopped again [after the stop of May 12, 2005, complained of in this action] in January 2006, allegedly for not signaling a left turn 100 feet before the intersection by an officer who was traveling in an opposite direction prior to stopping me. Neither the May 2005 nor the January 2006 stop resulted in any finding that I violated the law once I went to court; both tickets were dismissed. My complaints regarding these stops were not sustained by the Hanford Police Department.

11

Doc. # 61 at ¶8.

Based on an examination of both the pleadings and the additional facts alleged by Plaintiff in his opposition to Defendants' motion for summary judgment the court concludes Plaintiff's claim against City of Hanford pursuant to Monell fails as a matter of law.  Even if the court were to hold that Plaintiff's subjective impression that the City of Hanford is deliberately indifferent to the racist proclivities of its police officers constitutes substantial proof for that proposition – a holding the court is not able to make – Plaintiff has failed to either plead or provide facts that could show that City of Hanford's alleged deliberate indifference was a driving force behind Plaintiff's stop, detention, frisk, or arrest.

This not a mere drafting oversight.  Plaintiff has alleged no facts concerning the interaction between any of the individual officers and himself that could be interpreted as indicating improper discriminatory motive.  Plaintiff's pleading juxtaposes his subjective impression or assessment that Hanford Police Department manifests improper attitudes and practices with regard to race relations with the fact that Plaintiff was stopped, searched, frisked, and arrested in the apparent hope the court will infer the necessary causal connection.  As previously noted, the court may not draw inferences out of thin air.  Richards, 602 F. Supp. at 1244-45.  In the absence of actual evidence – as opposed to the mere allegation – that either Plaintiff's stop was the product of discriminatory animus, or that Plaintiff's stop was part of a pervasive and persistent pattern and practice of traffic stops motivated by discriminatory animus, Plaintiff cannot make the required causal connection between City of Hanford's alleged *de facto* policy and the harm Plaintiff allegedly suffered.

Summary judgment will therefore be granted as to City of Hanford with respect to Plaintiff's section 1983 claim.  This grant of partial summary judgment does not affect any liability City of Hanford may have with respect to Plaintiff's claims against the individual Defendants under state law.

**III. Selective Enforcement**

As Plaintiff recognizes, to prevail on a Fourteenth Amendment selective enforcement claim, he must show "that the [D]efendants' action had a discriminatory effect and that [D]efendants were motivated by a discriminatory purpose." Doc. # 61 at 17:13-16 (citing, *inter alia*, Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272-274 (1979)). As discussed previously, Plaintiff has failed to allege that his traffic stop was motivated by discriminatory purpose and has failed to proffer any evidence that would support a finding of discriminatory intent. Plaintiff contends Defendants' motion for summary judgment with regard to the selective enforcement claim is misleading and confusing because it fails to differentiate between a class-based Fourteenth Amendment claim and a "class of one" claim. Plaintiff's opposition is without merit because Plaintiff did not plead a "class of one" Fourteenth Amendment claim in the FAC.

Plaintiff's first claim for relief in his FAC sets forth the legal bases for Plaintiff's claims under federal law as follows:

> The individual [D]efendants' intentional and reckless acts, as described above, constitute a deprivation of [P]laintiff's rights, privileges and immunities under the United States Constitution, specifically, [P]laintiff's right under the Fourth Amendment not to be detained, frisked or arrested without reasonable suspicion or probable cause, he right not to be retaliated against as a result of an exercise of his First Amendment rights, and his right not to be subjected to selective enforcement of the law.

Doc. # 23 at ¶12.

Plaintiff's next paragraph in the FAC goes on to describe the how the City of Hanford's toleration of the racist conduct of its Police officers amounts to a *de facto* policy custom or practice. The FAC also makes a point of the fact that Plaintiff is African-American. It is something of a stretch for the court to find that Plaintiff has alleged any type of Fourteenth Amendment claim, given there is no mention of the Fourteenth Amendment, equal protection, or of treatment that is different than others similarly situated. However, Defendants have recognized a standard, class-based Fourteenth Amendment claim in

13

Plaintiff's first claim for relief. Notwithstanding its criticism of the lack of specificity in Plaintiff's pleading, the court has no reason to examine the adequacy of Plaintiff 's pleading where Defendants have chosen to challenge pleading in its merits. Defendants have no duty, however, to recognize a "class of one" Equal Protection claim where there neither the claim for relief as pled or its factual context gives any hint that such a claim is being alleged.

The court will grant Defendants motion for summary judgment as to Plaintiff's Equal Protection or selective enforcement claim. Practically speaking, this results in no prejudice to Plaintiff. A "class of one" claim under the Equal Protection Clause requires a showing that the plaintiff was treated differently that others similarly situated and there was no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Because Plaintiff's section 1983 claim is based on the allegation that his detention, search and arrest were unlawful because there was no probable cause or reasonable suspicion to justify the police action, Plaintiff's Equal Protection claim is entirely dependent on Plaintiff's First and Fourth Amendment claims. If probable cause for the detention and arrest is found, then by definition there is no basis for the Fourth Amendment claim and there exists a rational basis for Plaintiff's treatment. If, on the other hand, no probable cause is found, then, by definition, Plaintiff will prevail on his Fourth Amendment claim and there is no rational basis for Plaintiff's treatment. Under the facts of this case, Plaintiff's Fourteenth Amendment Equal Protection claim merges into Plaintiff's First and Fourth Amendment claims and offers no independent basis for recovery under the facts of this case.

THEREFORE, pursuant to the foregoing discussion, it is hereby ORDERED that:

1. Defendants' motion for summary judgment is GRANTED as to both individual Defendants and City of Hanford as to Plaintiff's claim for relief on the theory of "selective enforcement" as set forth in Plaintiff's first claim for relief.
2. Defendant's motion for summary judgment is GRANTED as to defendant City of

   Hanford only with respect to the claims alleged in Plaintiff's first claim for relief pursuant to 28 U.S.C. section 1983.

4.  Except as granted in item #1, above, Defendants' motion for summary judgment is DENIED as to all claims against all individual Defendants.

IT IS SO ORDERED.

**Dated:** **October 9, 2008**      **/s/ Anthony W. Ishii**
                    CHIEF UNITED STATES DISTRICT JUDGE

15